JOHN W. CROPPER *vs.* MARY T. GORHAM.
JOSEPH WALKER *vs.* DELLA MACFARLAND.

Berkshire.　　February 23, 1915. — May 20, 1915.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Assignment,* For the benefit of creditors. *Contract,* In writing. *Notice.*

A common law assignment for the benefit of creditors made in consideration of the release by the assignee, who was a creditor of the assignor and signed the instrument of assignment, and by other creditors, who assented in writing to the assignment, of their claims against the assignor, is valid against subsequent attachments made by creditors who did not assent to the assignment.

In an action by the assignee of an insolvent debtor under a common law assignment in writing clearly stated to be for the benefit of creditors to collect a debt admitted to be due to such debtor, testimony of the insolvent assignor that he understood the assignment to be for the benefit of some of his creditors and not for the benefit of all of them cannot affect the construction of the instrument of assignment.

It is not necessary to the validity of a common law assignment for the benefit of creditors that notice of it should be given to the debtors of the assignor.

Although after the making of a common law assignment for the benefit of creditors continued possession by the assignor of the property assigned often is evidence of fraud, yet it is not conclusive evidence, and the circumstances may be such as to show that there was no fraud.

SCIRE FACIAS in the District Court of Southern Berkshire dated June 4, 1913, by John W. Cropper, an execution creditor of Thomas Carder of Pittsfield, against Mary T. Gorham, who had been summoned as trustee in the action in which the execution issued, Joseph Walker of Quincy having been permitted by an order of court of August 12, 1913, to intervene as a claimant; and

CONTRACT by Joseph Walker, as the common law assignee for the benefit of the creditors of Thomas Carder under an instrument in writing dated January 18, 1913, upon a contract in writing between Carder, doing business under the name of the Carder Monument Company, and Della MacFarland, therein called Mrs. J. MacFarland, of Great Barrington, John W. Cropper having been made a defendant as claimant of the fund upon petitions of interpleader filed by both the defendant and the plaintiff. Writ in the Superior Court dated June 17, 1913.

The first case having come to the Superior Court by appeal, the two cases were tried together before *Hardy,* J. The defendants, Mrs. Gorham in the first case and Mrs. MacFarland in the second case, had no interest in the trial, it being admitted that each of them owed to Carder, the insolvent assignor, the sum of money claimed by Cropper as an execution creditor of Carder and by Walker as the common law assignee of Carder for the benefit of his creditors. The essential facts shown by the evidence are stated in the opinion.

The instrument of assignment under which Walker made his claim was as follows:

"This indenture, made this 18th day of January in the year 1913 by and between Thomas Carder of Pittsfield, Berkshire County, Massachusetts, doing business in said Pittsfield under the name of Carder Monument Company and Joseph Walker, Trustee, of Quincy, in said Commonwealth, doing business in said Quincy under the name of Aberdeen Granite Works. Witnesseth:

"That whereas the said Thomas Carder has been carrying on the business of manufacturing headstones and monuments in said Pittsfield under the said name of Carder Monument Company and has contracted indebtedness, liabilities and obligations to divers and sundry persons and parties:

"Now therefore, in consideration of one dollar and other valuable consideration to said Carder paid by said Walker, Trustee, the receipt whereof is hereby acknowledged, the said Carder does hereby assign, transfer, set over, give, grant, bargain, sell, convey, remise, release and confirm unto the said Joseph Walker, his successors or assigns as Trustee, as hereinafter set forth, all goods, wares, merchandise, fixtures, machinery, stock in trade, whether raw, or in process of manufacture, and all book accounts with full

power to collect and compel the payment of the same, either in his own name or in the name of said Carder Monument Company, also all policies of fire insurance and all other property and assets of every kind owned by said Carder, wherever the same may be located, but expressly excepting from the obligation of this assignment all property which is by law exempt from being taken on or by any legal process.

"To have and to hold to him, the said trustee above named and his successors or assigns, to his or their use forever, but in trust nevertheless for the uses and purposes following, to wit:

"1.   To carry on in the name of said Carder Monument Company, or otherwise, the said business so carried on by said Carder as aforesaid in the same or any other manner, but only until such time as all contracts heretofore entered into by said Carder Monument Company are carried out, with full power and authority to dispose, by sale or otherwise, of all the assets of said Carder Monument Company for the purposes of this trust but with a view to gradually winding up said business, instead of immediately selling the same; and, for the purpose of such carrying on said business as aforesaid, to employ or authorize the employment of the debtor as manager, of said business, and any other persons, as clerks, servants, or otherwise, and to pay out of the trust monies to the debtor, and to any other person who may be so employed, such salary or wages, or remuneration for services rendered, as the said trustee shall think fit.   It is hereby agreed and declared that for the purposes of carrying on as aforesaid the said business, it shall be lawful for the said trustee, from time to time, at the expense of the trust estate to procure by purchase, hire or otherwise, such stock in trade, fixtures, materials, chattels or articles as they or he shall think fit.

"And it is further agreed and declared that during such carrying on of the said business, the said trustee shall make or cause to be made, in proper books, full and true entries of all monies received or expended by him in carrying on said business, and shall keep a record of all transactions and matters connected with the same, and shall pay all rents, taxes, and outgoings, including the expense of insurance and repairs.   Said books and records to be open to the creditors of said Thomas Carder at any reasonable time upon request in writing.

"2.   After the above referred to contracts of the Carder Monument Company have been carried out, and all monies due said Carder, so far as is reasonably possible, are collected, the said trustee is:

"a.   To first pay and retain thereout, all costs, charges and expenses of or incidental to the negotiation, preparation and execution of these presents and of or to the carrying of the same into effect.

"b.   And second to pay all claims which are by law entitled to be paid in full and in priority to other debts; so far as the assets will permit.

"c.   And finally to pay, divide and distribute the residue of said monies ratably unto and among the said creditors in discharge of their said debts, by such instalments and at such times as said trustee shall think fit, and to pay the surplus, if any, to said Thomas Carder.

"3.   All claims of creditors are to be proved in the same manner as claims in bankruptcy proceedings.

" In witness whereof, the parties hereunto set their hands and seals to this and to another instrument of like tenor on the day and year first above mentioned.

Thomas Carder,     L.S.

Joseph Walker,     L.S.

"We, the following, being the creditors above referred to of said Thomas Carder, do hereby express our consent to the foregoing and in consideration therof, respectfully hereby release the said Thomas Carder from all claims and demands of every name and nature, owing from said Thomas Carder to us.

| Amount to Claim. | Name of Creditor. | |
|---|---|---|
| $3520.36 | Aberdeen Granite Works, Quincy, | L.S. |
| 800.70 | Adie and Milne, | L.S. |
| 410.00 | Littlejohn Adgers & Milne, | L.S. |
| 385.53 | Torreys & Co. M. C., | L.S. |
| 198.35 | Hoyt & Lebouvre Co., | L.S. |
| 198.80 | Edward W. Jones, Jones Bros. Co., | L.S. |
| 555.00 | Everson & Co., | L.S. |
| 325.60 | Geo. H. Bickford, Woodbury Gr. Co., | L.S." |

At the close of the evidence Cropper asked the judge to make the following rulings:

"1. The so called assignment, being a triparty agreement, viz., an agreement between Thomas Carder, assignor, Joseph Walker, assignee and creditor, and certain other creditors of said Carder, it would not take effect and be binding until signed by all the parties in interest, and if Cropper had not assented to said assignment and had made his attachment by trustee process before the contract of assignment was fully executed, it is not binding upon Cropper and the verdict should be for Cropper.

"2. If Thomas Carder made this assignment for the benefit of a portion of his creditors only, whom he intended to prefer, and intentionally omitted other creditors, including said Cropper, and if Walker supposed that the assignment included all of Carder's creditors, then the assignment is not a valid contract of assignment because there was a misunderstanding between Carder and Walker upon a material point as to the purpose and effect of the contract of assignment.

"3. If Carder was insolvent when he made this assignment, then such assignment is repugnant to the spirit and provisions of the bankruptcy act, so called, and is void as against all creditors not assenting to it, because the insolvency laws and the bankruptcy act require an equal distribution of the estate of an insolvent among all his creditors.

"4. If Cropper did not assent to this assignment, and if Carder did not intend to include him in this assignment, then the assignment is not binding upon Cropper and the verdict should be in his favor."

The judge refused to make any of these rulings, and gave to the jury certain instructions that were requested by Walker. The jury returned a verdict for Walker in each of the cases; and Cropper alleged exceptions.

The cases were submitted on briefs.

*H. N. Joyner,* for Cropper.

*W. A. Burns, J. B. Cummings & J. M. Rosenthal,* for Walker.

CARROLL, J. These two actions were tried together. The question in each case is the validity of a common law assignment for the benefit of creditors.

On January 18, 1913, Thomas Carder, while insolvent, made an

assignment under seal "of all goods, wares, merchandise, . . . and all book accounts" to Joseph Walker, a creditor to whom he was indebted in the sum of $3,500, as trustee for the benefit of his creditors. On January 20 of the same year Walker signed the instrument as trustee and at the same time signed as a creditor, releasing his claim against Carder in these words, "hereby release the said Thomas Carder from all claims and demands of every name and nature, owing from said Carter to us." Seven other creditors of the assignor became parties to the deed of assignment and release, "some of them signed immediately," although one of them did not sign until two months afterwards. Each of the defendants was indebted to the assignor and the amount of the indebtedness was not in dispute.

The conveyance of the debtor's property was founded on a valuable consideration. He was indebted to the assignee. The instrument was under seal, and by executing the deed of assignment the assignee became bound by its terms. Such an assignment is valid against subsequent attaching creditors, and the case is governed by *Reddy* v. *Raymond*, 194 Mass. 367.

The deed of assignment became effective as soon as it was executed by the assignor and by the trustee who was a creditor. It was not necessary to have the consent of all the creditors in order to make it legal; *Everett* v. *Walcott*, 15 Pick. 94; and it was not contended that the assets in the hands of the assignee were sufficient to satisfy the claims of assenting creditors. *Douglas* v. *Simpson*, 121 Mass. 281.

The evidence of Carder that he understood the assignment to be for the benefit of some of his creditors, and not for the benefit of all, even if the evidence was admissible, does not affect the true meaning and construction of the document. The rights of all the parties were governed by the written instrument and its construction was for the court. In the absence of some statutory prohibition, a debtor has the common law right to make an assignment for the benefit of some or all of his creditors, and when fully executed it can be set aside only by proceedings in bankruptcy. "It is true that the assignment could have been avoided by proceedings in bankruptcy seasonably begun or by attaching creditors before it has been fully executed; not however because it was necessarily in fraud of creditors, but in the former case be-

cause it is the policy of the law to take the distribution of bankrupt estates into its own hands, and in the latter case because until executed by one or more creditors the deed was ineffectual and the property remained the property of the debtor and was attachable as such." Morton, J., in *Reddy* v. *Raymond,* 194 Mass. 367, 369. See *Banfield* v. *Whipple,* 14 Allen, 13.

It was not necessary to give notice of the assignment to the debtors of the assignor. *Thayer* v. *Daniels,* 113 Mass. 129. *Putnam* v. *Story,* 132 Mass. 205. *Kingman* v. *Perkins,* 105 Mass. 111.

While continued possession by the assignor of the goods conveyed to the assignee oftentimes is sufficient evidence of fraud, it is not conclusive under the circumstances disclosed by the evidence. *Rice* v. *Cunningham,* 116 Mass. 466, 470.

The instructions of the presiding judge were sufficient and accurate and the requests of Cropper were properly refused.

*Exceptions overruled.*