SIDNEY J. KAGAN, trustee in bankruptcy, *vs.* WATTENDORF & Co. INC. & another.

Suffolk. February 4, 1935. — June 30, 1936.

Present: RUGG, C.J., PIERCE, FIELD, DONAHUE, & QUA, JJ.

*Assignment. Bankruptcy,* Preference. *Contract,* Construction. *Equity Jurisdiction,* To enforce assignment.

Evidence of a course of dealing established for years between a retail dealer and a wholesale dealer warranted findings that, at the beginning of a certain month the retail dealer signed a blank form of assignment of accounts to the wholesale dealer, that upon each sale by the retail dealer to a customer during the month the wholesale dealer furnished the merchandise therefor and the retail dealer then orally assigned the customer's account to the wholesale dealer, and that at the end of the month the wholesale dealer filled into the blank form the names and descriptions of the retailer's accounts with his customers during the month and inserted as its date the last day of the month; and, it appearing that the transactions during the month were not within four months before the filing of a petition in bankruptcy by the retail dealer although the date thus placed upon the assignment in writing was, there was no voidable preference within the provisions of the bankruptcy act.

The evidence warranted a finding that a retail dealer, in assigning his customers' accounts to a wholesale dealer from whom he purchased all his goods, assigned only an interest in each customer's account equal to the wholesale price of the goods sold to the customer, not the entire account.

Rights under an oral assignment of an interest in an account less than the whole are enforceable in equity.

BILL IN EQUITY, commenced by trustee writ in the Superior Court dated October 24, 1932.

The suit was heard by *Weed,* J. A final decree dismissed the bill. The plaintiff appealed.

*M. M. Horblit,* (*S. H. Kalish & H. Leventhal* with him,) for the plaintiff.

*C. A. Warren,* (*N. R. Voorhis* with him,) for the defendant.

DONAHUE, J. The plaintiff, who is the trustee in bankruptcy of one McDonald, has brought this bill in equity to recover amounts collected by the defendant, Watten-

dorf & Co. Inc., hereinafter to be referred to as the defendant, on accounts receivable which were assigned to it by McDonald. The bill alleges that the assignments of the accounts constituted voidable preferences under the bankruptcy act. U. S. Code, Title 11, § 96. The case was heard by a judge of the Superior Court who made a report of material facts, denied certain requests for rulings filed by the plaintiff and entered a final decree dismissing the bill with costs. All the evidence has been reported.

McDonald was a retail dealer in meats and provisions and, for several years prior to the transactions in 1930 with which we are here concerned, had been a customer of the defendant, a wholesale dealer. In 1927 they made an oral arrangement as to the method of their business dealing. This arrangement was still in force in 1930. The arrangement was not itself an assignment but an agreement as to the giving of assignments. Under it McDonald was required to buy from the defendant all the merchandise he needed to supply his customers. He agreed to sign in blank and deliver to the defendant on the first of each month two printed forms titled "Assignment of Accounts" and "Trust Receipt" in which the defendant should at the end of the month insert the names of customers of McDonald who had made purchases during the month, with the wholesale price of the merchandise bought by each. McDonald also agreed that at the close of each day he would furnish the defendant with a slip showing the names of his customers who had that day made purchases, with the wholesale price of the merchandise bought by each.

When, at the end of a month, the blank spaces in an assignment had been filled in, it expressed the transfer and assignment to the defendant of "all book debts, accounts, choses in action, now due or accruing due" from customers of McDonald whose names and the amount of whose purchases during the month had been inserted. Then followed the printed words "and also all book debts, accounts and choses in action which may at any time hereafter become due and owing, to the undersigned from the above listed

customers." The assignment also contained a formally stated power of attorney to the defendant to collect the accounts assigned. The "Trust Receipt" when filled in acknowledged the receipt of the enumerated accounts by McDonald for collection and recited that moneys so collected by him were to be trust funds and to be remitted when received to the defendant. The practice followed as to collections was that McDonald received the payments made by his customers, exhibited their checks to the defendant, deposited them in his own account and gave his own check to the defendant for the amounts shown on the monthly assignments.

For some months prior to February 1, 1930, the debt of McDonald to the defendant had steadily increased until it had reached an amount in excess of $6,700. The defendant learned late in February that McDonald had not, in accord with the practice which had been adopted, reported all the collections made by him. A blank form of assignment which, in conformity with their arrangement, had been signed in blank by McDonald on February 1, was on February 28 filled in by the defendant by the insertion of that date, and the names of customers who had made purchases and the amounts thereof. Another assignment on a similar form, dated March 1, was signed and delivered by McDonald. All the accounts there enumerated had appeared in the assignment dated February 28 or in earlier assignments. The defendant thereafter collected from McDonald's customers their outstanding and unpaid accounts and applied the proceeds, amounting to $3,055.34, to the reduction of McDonald's debt to the defendant.

We are not here concerned with those portions of the assignments dated February 28 and March 1 which refer to accounts falling due in the future. In the course of dealing between the parties under the arrangement which they had made, whenever a blank assignment was filled in the debts of McDonald's customers there enumerated had been contracted. None of the accounts collected after February 28 and held by the defendant, which are here the

subject of controversy, came into existence after February 28. They were all on that date existing accounts. The rule governing the decision in *Taylor* v. *Barton Child Co.* 228 Mass. 126, 130, that as against a trustee in bankruptcy of an assignor the latter's assignment passes no right to accounts not then in existence, has no application to the accounts here in issue, which existed at the time of the assignments.

For a different reason the written assignments dated February 28, 1930, and March 1, 1930, could not operate to make a transfer of the book accounts therein enumerated which would be good as against the trustee in bankruptcy. Those assignments were given within four months of the filing of McDonald's petition in bankruptcy on June 28, 1930, as that period of time must be computed under the bankruptcy act. U. S. Code, Title 11, § 54. *Bell* v. *West*, 44 Fed. Rep. (2d) 161. *Cooley* v. *Cook*, 125 Mass. 406. *Dutcher* v. *Wright*, 94 U. S. 553. The trial judge found, and the evidence warranted the findings, that McDonald was insolvent in February, 1930; that the defendant had on or before February 28 reasonable ground to believe him insolvent and that the effect of a transfer of book accounts on or later than February 28 would be to enable the defendant to obtain a greater percentage of its debt than other creditors of the same class. Upon these findings the purported transfers of the book accounts by means of the written assignments dated February 28 and March 1 constituted preferences which were voidable by the trustee in bankruptcy. U. S. Code, Title 11, § 96.

The trial judge, however, further found that prior to the four months period preceding the filing of the bankruptcy petition there had been oral assignments of all the items of indebtedness comprised in the book accounts here in controversy and that the formal written assignments dated February 28 and March 1 were merely substitutions for such earlier oral assignments. These findings must stand unless on the evidence, which is fully reported, we can say they are plainly wrong. *Trade Mutual Liability Ins. Co.* v. *Peters*, 291 Mass. 79, 84.

The agreement as to the book accounts was oral, made by business men acting without lawyers, and seeking to accomplish a purpose which was not improper. Their conduct and course of dealing must be considered in determining whether they intended to give to the defendant the security of the debts of McDonald's customers as those debts were from day to day contracted and whether what they did was adequate to accomplish that intent. *Sexton v. Kessler & Co. Ltd.* 225 U. S. 90, 95, 96.

The book accounts with which we are here concerned were all included in the written assignment dated February 28 or in similar prior written assignments. The assignment dated March 1, which was given at the suggestion of McDonald's attorney, enumerated no account not included in the assignment dated February 28 or in earlier assignments and hence need not further be referred to in the discussion of this branch of the case.

The assignment dated February 28, 1930, and all prior written assignments were given in accordance with the oral agreement entered into by McDonald and the defendant in 1927. There is nothing to warrant the conclusion that the agreement was made in bad faith, with the intent to defraud anyone or to create a preference to the detriment of other creditors in the event of bankruptcy. At the time the agreement was entered into McDonald's lack of capital and the terms of credit on which the defendant as well as other wholesalers sold merchandise made it necessary that some new arrangement should be made if their business relations were to continue. The agreement they then made contemplated that the defendant should furnish all the merchandise which McDonald would require to fill the orders of his customers. Its manifest purpose was to provide McDonald with a longer term of credit than was customary in the trade and to afford security to the defendant for the payment for the merchandise which should be sold to McDonald to supply the wants of his customers.

The blank forms of assignment which, under the arrangement, were signed by McDonald the first of every month, did not describe or identify any book accounts which were

to be the subject of assignment. The mere signing of that form in itself created no right in the defendant. It is manifest that the parties did not intend that it should. For one thing, at the end of every month the defendant in accordance with the arrangement inserted therein the names of McDonald's customers who had made purchases from him during the month with the wholesale price of the merchandise bought by each. The defendant was not at that time obliged to resort to McDonald to get the data necessary to make such insertions; it already had that information. At the end of every month the defendant held a completed formal written assignment of all the debts of McDonald's customers contracted during that month. The plaintiff contends that these were the only assignments made. But the signing of a blank form by McDonald at the beginning of a month and its completion by the defendant at the month's end were not everything that the arrangement between the parties required to be done or everything that in compliance with their arrangement was regularly done.

The trial judge was justified in giving some significance to the circumstances existing in 1927 when their agreement was made. Prior to that time McDonald had been obliged to pay weekly for the merchandise he purchased from the defendant. Difficulties arose because he lacked the capital from which to make such weekly payments and because his customers paid their bills monthly, usually not before the tenth of the month following the month in which deliveries of merchandise to them were made. He had come to be three weeks in arrears in his payments and the defendant had refused to sell him any more merchandise on credit. Both parties however wished to continue business relations. The defendant sought a safe method of doing business with McDonald and finally made a proposal which had as one of its essential purposes the provision of security for the defendant in extending to him a longer term of credit than had hitherto been granted. The proposal, which was accepted by McDonald, required more than the written assignment of book accounts as above described. It provided that when orders were received by

McDonald from his customers the merchandise necessary to fill these orders should be purchased from the defendant and that at the close of each business day McDonald should furnish to the defendant a statement containing the name of each customer who had that day made a purchase and the amount of the purchase made by each expressed in terms of wholesale prices.

This absolute requirement that McDonald on the very day that he made sales to his customers must report the sales to the defendant with an identification of the customers making purchases by naming them, and of the merchandise bought by each, to the extent of stating its wholesale price, was not essential to an arrangement that the defendant should have at the end of every month a written assignment of accounts originating during the month. The agreement might have provided that McDonald should, at the close of each month, furnish a list of such accounts for inclusion in the written assignments which became effective monthly. The insistence on daily reports identifying accounts receivable as they came into existence, substantially contemporaneously with the defendant furnishing merchandise, tends to indicate some other purpose than merely supplying data for the completion of the written assignments.

If the written assignments were the only assignments contemplated the defendant would be furnished with no security for the substantial debts to the defendant incurred by McDonald for merchandise furnished during each month, until the month had ended. The agreement contemplated that when, on the tenth of the month following the month when the merchandise was sold, McDonald's customers paid their bills, the defendant should be paid. Thus, so far as respects the effect of the written assignments, for a considerable part of the period during which the agreement provided an extended term of credit, the defendant would be without security for the debts owed to it by McDonald. It seems unlikely that such a result was intended in view of the circumstances in which the arrangement was made and its manifest purposes.

When the parties made their agreement in 1927 they

adopted a printed form which expressed their intention as to the terms of any assignment which should later be made. When on any day of the month a report of sales was made there would always be in existence one of those printed forms which had been signed in blank by McDonald on the first day of that month although it would not be an effective written assignment until filled in by the defendant at the end of the month. In view of the fact that the contemplated terms of future assignments had been fixed at the outset, the absence of any recital of terms of assignment when the daily reports were delivered has little significance.

It cannot be said that the trial judge erred in giving the weight he did to that part of the arrangement which required McDonald to provide daily statements of sales. The giving of orders for merchandise by his customers, the furnishing by the defendant of the merchandise with which to fill the orders, the sale and delivery of that merchandise by McDonald to his customers and the rendering by McDonald to the defendant of a statement of the sales were, in the contemplation of the parties, all to take place on the same day. In view of an essential purpose of the whole arrangement, the provision of security for the defendant, the judge cannot be said to have been wrong in finding that the advancement of the consideration by the defendant in providing the merchandise and the furnishing of security by McDonald were in fact parts of one transaction or in finding that the evidence warranted the finding that the daily deliveries of goods to McDonald would not have been made but for the promise of security therefor and that the daily transactions between the parties constituted oral assignments of an interest in the debts which McDonald's customers daily incurred.

The evidence taken as a whole provided, we think, a basis for finding that the parties intended to make such oral assignments and for finding that consideration for the assignments was furnished. There is nothing in the legal characteristics of book accounts to prevent the finding that the intention of the parties to make such assignments was

adequately manifested by what they did.  The debts which from day to day came into existence when McDonald sold merchandise on credit to his customers were assignable choses in action.  *Dix* v. *Cobb*, 4 Mass. 508.  *Moore* v. *Coughlin*, 4 Allen, 335.  *Rogers* v. *Abbott*, 206 Mass. 270. *Cropper* v. *Gorham*, 221 Mass. 119.  They could be validly assigned orally, *New England Cabinet Works* v. *Morris*, 226 Mass. 246, 254, *Currier* v. *Howard*, 14 Gray, 511, Williston, Contracts, §§ 424, 430, Am. Law Inst. Restatement: Contracts, § 157, and without notice being given to the debtors.  *Taylor* v. *Barton Child Co.* 228 Mass. 126, 131. No particular form of words or of conduct is necessary to constitute such an assignment.  "A valid assignment may be made by any words or acts which fairly indicate an intention to make the assignee the owner of a claim." *Cosmopolitan Trust Co.* v. *Leonard Watch Co.* 249 Mass. 14, 19.

By reason of what has been hitherto said it is unnecessary to discuss the plaintiff's requests for rulings which were denied.

The trial judge found that the defendant, after February 28, 1930, collected from McDonald's customers their outstanding and unpaid accounts and applied the proceeds to the credit of his debt to the defendant.  The entry of the final decree dismissing the bill involved the finding that the total amount of the debts so collected had been orally assigned to the defendant.  The evidence, however, does not warrant the conclusion that McDonald assigned to the defendant his entire interest in any account.  What was written against the name of each customer on the daily statements of sales when the oral assignments were made, was the wholesale price of the merchandise purchased, not the retail price which was the amount of the debt of the customer to McDonald.  It does not appear that the defendant knew, at least until February 28, 1930, what was the retail price to be paid by the customers.  Under the practice adopted McDonald was entitled to retain the difference between the wholesale and the retail price of the merchandise.  We think the evidence does not warrant the finding that the parties intended that McDonald should

assign as security the total amount of the customers' debts. What the defendant was given was an interest in each account equal in amount to the wholesale price charged by the defendant for the merchandise furnished to fill the customer's orders. Such partial assignments are enforceable in equitable proceedings. *Smith* v. *Weeks*, 252 Mass. 244, 250. *Andrews Electric, Inc.* v. *St. Alphonse Catholic Total Abstinence Society*, 233 Mass. 20, 22. *James* v. *Newton*, 142 Mass. 366.

The judge found that the defendant collected from McDonald's customers and applied in reduction of McDonald's debt the sum of $3,055.34. This represented the retail purchase price of merchandise sold by McDonald to his customers, whereas the defendant was entitled only to so much of this total amount as represented the wholesale price of that merchandise. The plaintiff is here entitled to recover the difference. The record, however, does not disclose what was the wholesale price of the merchandise in question and we cannot determine the amount which the plaintiff should recover. The final decree is reversed and the case is remanded to the Superior Court for the ascertainment of the amount due the plaintiff in accordance with this opinion, and for the entry of a final decree for the plaintiff in that amount.

*Ordered accordingly.*