Troy, Paul E., J.
INTRODUCTION
The plaintiff, the State of Ohio, ex rel. Attorney General Mike DeWine, brought this motion for ap *465 proval of a continuing attachment by trustee process of funds currently held in or hereinafter deposited or transferred in the defendant, Grand Tobacco’s (“GTj, escrow account, number 2344760, at Eastern Bank. For the following reasons, this motion is ALLOWED.
BACKGROUND
In 1998, the “Big Four” tobacco manufacturers and forty-six states entered into the Master Settlement Agreement (“MSA”). Pursuant to the MSA, these tobacco manufacturers have ongoing settlement payment obligations in return for protection from subsequent lawsuits. In order to offset the competitive advantage that would otherwise benefit those who do not enter into the MSA, many states also have enacted Non-Participating Manufacturer Statutes (“NPM statutes”) which require, among other things, that a nonparticipating manufacturer (“NPM”) deposit certain funds in an escrow account to satisfy any judgment that the settling state should win with the NPM.
GT is an Armenian manufacturer of cigarettes. It did not participate in the MSA, so therefore it is a NPM. It previously sold its products in Ohio but it no longer does. It does however, continue to sell its products in various states throughout the United States through International Tobacco Partners (“ITP”). ITP is an importer of GTs tobacco products and other foreign tobacco manufacturers. ITP sells GTs tobacco products through a series of distributors located in various states.
In Missouri, in order for GT to sell its tobacco products, it is required to establish a qualified escrow account (“Escrow Account”) pursuant to Missouri’s NPM statute. GT must make annual payments into that account. The Missouri NPM statute governs disbursements out of the Escrow Account. Specifically, funds may be released in order to pay a judgment or settlement. Mo.Rev.Stat. §196.1003(b)(2). Additionally, if the tobacco products manufacturer establishes that it overpaid in any particular year, then any such “excess shall be released from escrow and revert back to such tobacco product manufacturer.” Mo.Rev.Stat. §196.1003(b)(2)(B). Lastly, if funds are not released pursuant to Sections 196.1003(b)(2)(A) or (b)(2)(B) within twenty-five years after they were placed into escrow, then they will revert back to the tobacco product manufacturer. Mo.Rev.Stat. §196.1003(b) (2) (C).
In order to satisfy its legal requirements pursuant to Missouri law, on April 7, 2010, GT entered into an escrow agreement (“Escrow Agreement”) with Eastern Bank whereby GT agreed to tender for deposit the funds required to be placed into the Escrow Account pursuant to the Missouri’s NPM statutes. GT and ITP allege that they agreed that ITP would fund the Escrow Account. In consideration for ITP making all of GTs required deposits into the Escrow Account, GT purportedly transferred and assigned ITP all amounts released to GT under the NPM statutes on its MSA payments. ITP alleges that it signed the assignment on January 7, 2011, when the principals of ITP and GT met in Nassau, Bahamas. Thereafter, ITP alleges that GT signed the agreement on June 7,2011, in Armenia.
The State of Ohio recovered a judgment against GT for failure to make MSA payments due to Ohio for the years 2001 through 2003 in February 2005 for $1,253,961.61. This judgment was affirmed on appeal in 2007. On May 31, 2011, Ohio sought and obtained an ex parte writ of attachment against GT for any of GTs 2010 payments to its Missouri Escrow Account to satisfy its February 2005 judgment. Thereafter counsel for Ohio on June 10, 2011 and again on July 6, 2011, served Eastern Bank with summonses and the writ of attachment. In response, Eastern Bank answered that there were no assets of GT in the hands of Eastern Bank and that all of GTs rights in any released amount were previously assigned to ITP. On December 6, 2011, this court entered a default, and on December 7, 2011, it entered judgment for Ohio in the amount of $2,694,772.10 plus postjudgment interest of twelve percent per annum.
On January 30, 2012, Missouri authorized Eastern Bank to release $981,401.06 from GT’s 2010 MSA payment pursuant to Mo.Rev.Stat. §196.1003(b)(2)(B). Thereafter, the released amount was transferred from GTs Escrow Account at Eastern Bank to GTs Master Account at Eastern Bank. The released funds remain in GT’s Master Escrow Account (“Master Account”) pursuant to an order of this court. Ohio currently seeks a continuing attachment of the funds in the Master Account to satisfy its judgment.
DISCUSSION
In determining whether an attachment is warranted, the court should focus on whether “there is a reasonable likelihood that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment over and above any liability insurance shown by the defendant to be available to satisfy the judgment.” Mass.R.Civ.Pro. 4.1.
As an initial matter, the court will address an argument raised by counsel for ITP at the hearing concerning the ownership of the Master Account funds. Counsel for ITP alleges that ITP and GT entered into an agreement whereby ITP agreed to make all of GTs MSA payments. As a result, ITP argues that because it deposited the funds into the Escrow Account that were then transferred into the Master Account, it is the proper owner of such funds. The court finds this argument must fail. If merely depositing the funds into the Escrow Account rendered ITP the sole owner of such funds, a written assignment transferring ownership of the funds to ITP would be unnecessary. The language in the Escrow Agreement as well as the NPM statute, indicate that the deposited funds were to be held for the benefit of GT so that GTs cigarettes could be sold in Missouri, and if possible, *466 the funds would revert to the tobacco manufacturer. The court does not read Missouri’s NPM statutes or the Escrow Agreement to suggest that ITP became the owner of the funds merely by depositing them. As GT noted in its letter dated August 8, 2011 that it sent to Missouri’s Attorney General, ITP is not a party to the Escrow Agreement, is not a beneficiary of the Escrow Agreement, and has no authority to force Eastern Bank or Grand Tobacco to violate the Escrow Agreement and have Eastern Bank release money from the Escrow Account. Lastly, Eastern Bank has stated that GTs interest in the Escrow Account is a contingent remainder. Thus, if GT validly assigned its interest to ITP, ITP would also only have a contingent remainder, and therefore would only own the funds with no encumbrances upon their release by Missouri pursuant to its NPM statutes.
As the court has determined that ITP is not the owner of the funds simply by making the required deposits, it must next address whether GTs purported assignment of the funds is valid. “A valid assignment may be made by any words or acts which fairly indicate an intention to make the assignee owner of a claim.” Boston v. Aetna Life Ins. Co., 399 Mass. 569, 572 (1987), quoting Cosmopolitan Trust Co. v. Leonard Watch Co., 249 Mass. 14, 19 (1924). See also Kagan v. Wattendorf & Co., 294 Mass. 588, 595-96 (1936). The important point is what the purported assignor did and what evidence there was of his intent. Id. Here, the purported assignment states that GT and ITP agree that ITP is the owner of the MSA escrow funds established by ITP and that they hereby confirm their understanding and agreement that any such funds belong to ITP. Given that there are no magic words required for a valid assignment, the court finds that for purposes of this motion, the language used is sufficient to indicate GTs intention to make ITP the owner of such funds. Thus, GTs assignment to ITP of the funds now located in the Master Account is valid.
The fact that court finds there was a valid assignment of the escrow funds does not end its analysis. Ohio alleges that in the event the purported assignment was valid, it is void because it was a fraudulent conveyance. Under G.L.c. 109A, §5(a)(l), a transfer is fraudulent if it was made “with actual intent to hinder, delay, or defraud any creditor of the debtor.” Actual intent can be proven through circumstantial evidence and inferences. Palmer v. Murphy, 42 Mass.App.Ct. 334, 345 (1997). In determining actual intent under G.L.c. 109A, §5(a)(l), consideration may be given, among other factors, to whether: (1) the transfer or obligation was made to an insider; (2) the debtor retained possession or control of the properly transferred after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all of the debtor’s assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor. G.L.c. 109A, §5(b).
Here, the evidence in the present record suggests that Ohio has a plausible claim under G.L.c. 109A. The court finds that for the reasons stated in Ohio’s memoranda, many of the factors listed in G.L.c. 109A support an inference that GT had actual intent to defraud or hinder Ohio’s efforts to recover its judgment. Specifically, the court notes that it appears that there is a close insider relationship between the directors and shareholders of ITP and GT, as Mikael Var-danyan, the president of GT, is an owner of twenty-five percent of ITP shares. Additionally, while ITP alleges that GT is a multi-million dollar company, GTs interest in the released escrow funds are GT’s only asset located within the United States. ITP argues that the purported assignment was fully executed on June 7, 2011. However, Ohio alleges in its papers that it notified the Law Offices of Squire & Pierre-Louis, LLC, who served as GTs counsel in the underlying action and advised them of the status of the pending case as well as the writ of attachment, on June 1, 2011. On June 2, 2011, Ohio’s counsel was first contacted by Attorney Gary Sachs, who indicated that he represented ITP in their ongoing Chapter 11 proceeding in the Bankruptcy Court for the Eastern District of New York. The assignment was allegedly fully signed on June 7, 2011, and Attorney Sachs faxed counsel for Ohio a copy on June 8,2011. Given the timing of these events, the court finds that based on the present record, it may be reasonably inferred that Grand Tobacco and ITP were aware of Ohio’s efforts to obtain an attachment of the escrow funds and that the assignment was intended to hinder those efforts such that the assignment is void.
Based upon the foregoing, the court finds that Ohio has a demonstrated a reasonable likelihood that it will recover judgment at this time on this claim.
ORDER
For the following reasons, it is hereby ORDERED that the State of Ohio’s Motion for Continuing Attachment by Trustee Process of Funds Currently Held in or Hereinafter Deposited or Transferred into GTs Account at Eastern Bank, Identified as Account Number 2347760, be ALLOWED.