**Raul F. RODRIGUEZ,**
**Plaintiff, Appellant,**

v.

**BANCO CENTRAL, et al.,**
**Defendants, Appellees.**

**Raul RODRIGUEZ RODRIGUEZ, et al.,**
**Plaintiffs, Appellants,**

v.

**BANCO CENTRAL CORPORATION,**
**et al.,**
**Defendants, Appellees.**

**Raul F. RODRIGUEZ, et al.,**
**Plaintiffs, Appellees,**

v.

**BANCO CENTRAL, et al.,**
**Defendants, Appellants.**

**Nos. 90–1047, 90–1193 and 90–1403.**

United States Court of Appeals,
First Circuit.

Heard Sept. 7, 1990.

Decided Oct. 30, 1990.

---

Gerardo Mariani, with whom Law Offices of Francisco Lopez–Romo and Woods & Woods, Hato Rey, P.R., were on brief for plaintiffs.

Luis Sanchez–Betances, with whom Ivonne Cruz Serrano and Sanchez–Betances & Sifre, Hato Rey, P.R., were on brief for defendants.

Before BREYER, Chief Judge, and VAN GRAAFEILAND,* Senior Circuit Judge, and SELYA, Circuit Judge.

BREYER, Chief Judge.

During the 1970s' the plaintiffs in this case bought land in Florida, which, they say, turned out to be a swamp. In their view, the seller of the land, a development company, defrauded them, and several banks, appellant Banco Central among them, helped the development company do so. They sued the banks, charging a violation of the federal anti-racketeering (RICO) statute (and several other statutes). The defendants moved for summary judgment.

On January 25, 1990, the district court denied defendants' motion for summary judgment on one of plaintiffs' RICO claims. *See Rodriguez v. Banco Central,* [1989–1990 Transfer Binder] Fed.Sec.L.Rep. ¶ 94,978, 1990 WL 54820 (D.P.R. Jan. 25, 1990). In doing so, the court, pursuant to 28 U.S.C. § 1292(b), certified to us a controlling question of law, namely (in the district court's words):

When does a civil RICO cause of action accrue for statute of limitations purposes?

*Rodriguez v. Banco Central,* 727 F.Supp. 759, 779 (D.P.R.1989) (referred to in *Rodriguez v. Banco Central,* [1989–1990 Transfer Binder] Fed.Sec.L.Rep. at 95,478). Because the circuits are divided about the

proper answer to this question, and because the district court has followed the minority view, we agreed to answer this question. After considering the arguments, we find that we agree with the majority view, which ties "accrual" to the time a plaintiff knew or should have known of his injury. We shall follow the principles adopted by the Second Circuit in *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096 (2d Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989).

In addition, the plaintiffs would like us to answer several other certified questions. For reasons that we shall explain in Part II below, we lack jurisdiction to do so.

## I

### The RICO Question

■ The RICO provision relevant to this appeal makes it a crime

for any person … to conduct or participate … in the conduct of [an] enterprise's affairs through a pattern of racketeering activity….

18 U.S.C. § 1962(c). Another section permits

any person injured in his business or property by reason of a violation of section 1962

to recover treble damages. 18 U.S.C. § 1964(c). The Supreme Court has held that "the 4–year statute of limitations for Clayton Act actions, 15 U.S.C. § 15b, [is] the most appropriate limitations period for RICO actions." *Agency Holding Corp. v. Malley–Duff & Assocs., Inc.,* 483 U.S. 143, 156, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987). A number of circuit courts of appeals, in applying this statute of limitations, have decided that the statute begins to run when a plaintiff discovered, or should have discovered, his injury. The Second Circuit, for example, has written that

each time a plaintiff suffers an injury caused by a violation of 18 U.S.C. § 1962, a cause of action to recover damages

---

* Of the Second Circuit, sitting by designation.

based on that injury accrues to plaintiff at the time he discovered or should have discovered the injury.

*Rhoades,* 859 F.2d at 1102; *accord Beneficial Standard Life Ins. Co. v. Madariaga,* 851 F.2d 271, 275 (9th Cir.1988); *State Farm Mut. Auto. Ins. Co. v. Ammann,* 828 F.2d 4, 5 (9th Cir.1987) (Kennedy, J., concurring); *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.,* 828 F.2d 211, 220 (4th Cir.1987); *Bowling v. Founders Title Co.,* 773 F.2d 1175, 1178 (11th Cir.1985), *cert. denied,* 475 U.S. 1109, 106 S.Ct. 1516, 89 L.Ed.2d 915 (1986); *Compton v. Ide,* 732 F.2d 1429, 1433 (9th Cir. 1984); *see also Bath v. Bushkin, Gaims, Gaines & Jonas,* 913 F.2d 817, 820 (10th Cir.1990); *Bivens Gardens Office Bldg., Inc. v. Barnett Bank of Fla., Inc.,* 906 F.2d 1546, 1553–54 (11th Cir.1990).

The Third Circuit, however, has followed a different rule. It has said that, even if a plaintiff earlier knew about his injury, the statute of limitations will not begin to run until the plaintiff also knew or should have known about "the *last* predicate act which is part of the same pattern of racketeering activity." *Keystone Ins. Co. v. Houghton,* 863 F.2d 1125, 1130 (3d Cir.1988) (emphasis added). In other words, if the plaintiff knows of his injury in, say, 1980, if the racketeering act that caused the 1980 injury took place in 1980, but the "pattern of racketeering" continues until, say, 1989, plaintiff will have until 1993 (not 1984) to file his complaint. The district court here has held that this latter rule applies to this case and permits certain plaintiffs to proceed to trial, plaintiffs whose actions the majority of circuits would find time barred. *See* 727 F.Supp. at 778–79.

We believe, however, that we should follow the majority rule rather than that of the Third Circuit. We find the reasoning of the Second Circuit in *Rhoades* persuasive. To start the statute running when a plaintiff knew or should have known of his injury seems consistent with the language of RICO's "treble damage" provision. *See* 18 U.S.C. § 1964(c). Such a rule is at least roughly similar to the Clayton Act's rule that "a cause of action ac-

crues and the statute begins to run when a defendant commits an act that injures a plaintiff's business." *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 338, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971); *see also* 2 P. Areeda & D. Turner, *Antitrust Law* § 325b at 120 (1978). It is similar to the accrual concepts that govern actions for fraud, *see, e.g., Cook v. Avien, Inc.,* 573 F.2d 685, 695 (1st Cir.1978) (securities fraud), which is often the crime that underpins private RICO actions. *See Bankers Trust Co. v. Feldesman,* 648 F.Supp. 17, 36 n. 8 (S.D.N.Y.1986), *rev'd sub nom. Bankers Trust Co. v. Rhoades,* 859 F.2d 1096 (2d Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989).

We see much less to be said for permitting a plaintiff who knows of his injury to postpone the time the statute of limitations begins to run until he also knows of the "*last* predicate act" that forms part of the "pattern of racketeering activity" that hurt him. For one thing, such a rule is less directly related to the language of the RICO statute, which focuses upon "injur[y]" to business or property. 18 U.S.C. § 1964(c). For another, it does not seem to reflect Clayton Act principles. The Clayton Act, as far as we are aware, starts the statute running once a particular plaintiff realizes that he has been overcharged because of price fixing; the fact that the *same* conspiracy may, at a later time, have injured someone else does not postpone the first plaintiff's accrual date. Assume, for example, that buyers of, say, plumbing supplies realize, say in 1980, that a price-fixing conspiracy has raised the price of the fixtures they have bought. Assume further that the same plumbing conspirators, as part of the same conspiracy, raise the price of plumbing fixtures sold to *different* buyers in, say 1990. We are aware of no case, nor any other legal authority, that would suggest that the limitations period applicable to the *first* group of buyers does not begin to run until 1990, when the *second* group is injured.

Further, the "last predicate act" rule could produce long limitations periods. As

we have pointed out, that rule would permit a plaintiff, knowing of his injury in 1980, to begin suit to recover damages for that injury four years after the "last predicate act" that is part of the "pattern of racketeering activity" that caused the harm. A "pattern of racketeering activity" merely requires two specified criminal acts "the last of which occurred within ten years ... after the commission of a prior act," 18 U.S.C. § 1961(5), and which are related and amount to or pose a threat of continued criminal activity. *See H.J. Inc. v. Northwestern Bell Tel. Co.*, —— U.S. ——, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285, n. 14, 87 L.Ed.2d 346 (1985). If the "pattern" took the form of one related act, say, every two years (so that each act "occurred within ten years ... after a prior act"), say, for thirty or forty years, the Third Circuit's test, literally interpreted, would permit the plaintiff (injured in 1980) to bring suit thirty-four or forty-four years later. Even if one somehow read the statutory "ten year" reference to cut off the chain of related acts, the rule would extend the statute of limitations, giving a fully knowledgeable plaintiff fourteen, rather than four, years to bring suit. Such a reading of the statute is difficult to reconcile with the Supreme Court's determination that "there is a need for a uniform statute of limitations for civil RICO" lest "the memories of witnesses ... fade[ ] or evidence [be] ... lost." *Agency Holding*, 483 U.S. at 156, 107 S.Ct. at 27 (quoting *Wilson v. Garcia*, 471 U.S. 261, 271, 105 S.Ct. 1938, 1944, 85 L.Ed.2d 254 (1985)). In fact, it seems directly inconsistent with the Supreme Court's choice of a four-year Clayton Act statute *instead of* criminal RICO's five-year statute of limitations, which indeed runs from the "last predicate act." *See United States v. Torres Lopez*, 851 F.2d 520, 525 (1st Cir.1988), *cert. denied*, 489 U.S. 1021, 109 S.Ct. 1144, 103 L.Ed.2d 204 (1989); *United States v. Persico*, 832 F.2d 705, 714 (2d Cir.1987), *cert. denied*, 486 U.S. 1022, 108 S.Ct. 1995, 1996, 100 L.Ed.2d 227 (1988). In any event, we do not know why a knowledgeable plaintiff should have fourteen, rather than four years to bring suit.

The Third Circuit may have reached its contrary conclusion for two reasons. First, it was worried about a defendant who engages in *two* predicate criminal acts, say, five years apart. A plaintiff who knows of his injury and *one* such act in Year One still could not bring suit until the defendant commits the second in Year Six, by which time, the Third Circuit feared, under the majority rule, the statute of limitations would have run. We doubt, however, that this example poses the serious problem that the Third Circuit thought. For one thing, it seems unlikely that this type of example will arise very often. For another thing, this example, at most, would suggest tying accrual to a plaintiff's knowledge of (injury and) the other elements of his cause of action. At most, it suggests requiring that the plaintiff know (or should have known) of *two* predicate acts (the one that injured him plus one other), not of the *last* predicate act. *See Bath*, 913 F.2d at 820 (rejecting "last predicate act rule" while holding that statute does not start running until plaintiff discovers pattern); *Bivens Gardens*, 906 F.2d at 1553–54 (same). We need not decide whether some special rule, say a tolling rule, would apply to this example, because the issue is not before us, just as it was not before the Second Circuit in *Rhoades*.

Second, the Third Circuit's conclusion may reflect concern about the plaintiff who knows of his *injury* in Year One but does not know about the *criminal acts that caused that injury* until, say, Years Six or Seven. Perhaps the Third Circuit read the *Rhoades* rule literally to bar the plaintiff's action in such a case. To prevent that result, the Third Circuit would have the statute run from the *later of* a) knowledge of the injury, or b) knowledge of the predicate acts that form the "pattern." The Third Circuit went on to define the "pattern" to include "the last predicate act."

The problem that the Third Circuit saw, however, may be more apparent than real. Courts applying the Clayton Act have permitted an antitrust plaintiff in analogous

circumstances to bring a suit, for they have found the statute of limitations *tolled* by "fraudulent concealment." *See, e.g., Berkson v. Del Monte Corp.*, 743 F.2d 53, 55 (1st Cir.1984), *cert. denied*, 470 U.S. 1056, 105 S.Ct. 1765, 84 L.Ed.2d 826 (1985). One can easily imagine the development of an analogous "tolling" doctrine in RICO cases. *See Bath*, 913 F.2d at 820 (noting that "[s]tandard tolling exceptions continue to apply"); *Rhoades*, 859 F.2d at 1105 (same). If so, as a practical matter (except for the problem of the last predicate act), the Third Circuit and other circuits may not really disagree. Since the district court's opinion in the case before us indicates that the plaintiffs in this case would have learned about the relevant "predicate criminal acts" (*e.g.*, the land sales) either before, or at the same time as, they knew (or should have known) about their injuries, we need not decide this question now.

The upshot is that we shall follow the *Rhoades* accrual rules, at least in respect to the statute of limitations issues now before us. The district court, noting that the magic date—four years prior to the filing of the complaint—was August 2, 1978, wrote that the *Rhoades* discovery rule would bar some plaintiffs, but it might not bar all of them. *See* 727 F.Supp. at 778–79. We therefore send this case back to the district court to make the relevant factual determinations.

## II

### Other Certified Questions

■ The plaintiffs, too, have appealed, from an order entered by the district court on November 27, 1989, *see Rodriguez v. Banco Central*, 727 F.Supp. 759 (D.P.R. 1989), insofar as it dismissed their claims based on statutes other than 18 U.S.C. § 1962(c). The district court certified four legal questions relevant to these claims; on May 7, 1990, we issued an order agreeing to decide two of the four; but, after reviewing the record, we find that we cannot do so.

We cannot now answer the plaintiffs' questions because we lack jurisdiction over their appeal. The statute that controls the plaintiffs' effort to present their questions says the following:

> When a district judge, in making ... an order not otherwise appealable[, finds that there is a controlling question of law that is unsettled] ... and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, ... [t]he Court of Appeals ... may ..., in its discretion, permit an appeal to be taken from such order, *if application is made to it within ten days after the entry of the order....*

28 U.S.C. § 1292(b) (emphasis added). The emphasized language says that where, as here, a party wishes to present a question by appealing an order under this section, the party must apply within ten days (of the order's entry) to *this* court, not to the district court. *See In re La Providencia Dev. Corp.*, 515 F.2d 94, 95–96 (1st Cir. 1975) (filing a notice of appeal in a district court does *not* give the court of appeals jurisdiction to hear a § 1292(b) appeal); *accord Inmates of the Allegheny County Jail v. Wecht*, 873 F.2d 55, 57 (3d Cir.1989); *Stone v. Heckler*, 722 F.2d 464, 466 (9th Cir.1983); *Aparicio v. Swan Lake*, 643 F.2d 1109, 1111 (5th Cir.1981); *Alabama Labor Council v. Alabama*, 453 F.2d 922, 923–25 (5th Cir.1972). Moreover, the statute's ten-day time limit is jurisdictional, which is to say that the law does not permit us to forgive a party's failure to comply. *See Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 161 & n. 1, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (Stevens, J., dissenting) (collecting cases).

Our reading of the record reveals the following procedural events relevant to plaintiffs' efforts to appeal:

1. On November 27, 1989, the district court entered an order granting summary judgment for defendants in respect to most of plaintiffs' claims, but permitting the plaintiffs to amend their complaint to restate the RICO claim that we discussed in Part I of this opinion. (We shall call this order the "November Order.") At the same

time, the court certified five questions pursuant to § 1292(b).

2. On December 6, 1989 (within ten days of the November Order), the plaintiffs filed a notice of appeal *in the district court*, in which they raised four of the five certified questions. The clerk of the district court, as a matter of routine, forwarded a copy of the notice of appeal and of the district court docket sheet to this court, where they arrived on January 18, 1990 (after the ten days had run).

3. The next day, on January 19, 1990, this court, puzzled as to how the plaintiffs could appeal where there was no final judgment and noticing another defect in the notice of appeal (it did not properly list all the parties who were appealing), entered an order, in effect asking the plaintiffs to explain.

4. On January 25, 1990, the district court entered another order (which we shall call the "January Order") in which it denied the defendants' motions to dismiss the plaintiffs' repleaded RICO claims, and in which it "renew[ed] its certification" of the questions it had certified in the November Order.

5. On February 2, 1990, plaintiffs filed in *this* court a paper entitled "Motion Informing of Filing an Amended Notice of Interlocutory Appeal." That paper purported to answer the questions this court asked on January 19, and it told this court that plaintiffs had filed a new notice of appeal from the November Order, but in the *district* court.

Since the plaintiffs did not file a petition for permission to appeal under § 1292(b) in this court within ten days of the district court's entry of its November Order, we lack jurisdiction over their appeal from that order. *See La Providencia,* 515 F.2d at 95–96. They therefore cannot raise the legal questions they wish to raise on the basis of an appeal from that November Order.

The question remains, however, whether they have, in effect, raised the same questions by appealing from the January Order. We usually try to characterize filings liberally, with an eye towards helping appellants overcome jurisdictional defects. But, after examining the papers, we do not see how we can characterize the "Informative Motion" (which plaintiffs filed on February 2, 1990) as if it constituted a petition for permission to appeal the *January Order* (which the district court had entered less than ten days earlier). The plaintiffs' "Informative Motion" nowhere refers to the January 25 Order. The attached papers say that plaintiffs are appealing "from the Order entered in this action on November 27, 1989." The "Informative Motion" refers to Appellate Rule 4(a)(5), which does not apply to § 1292(b) appeals. The "Informative Motion" nowhere refers to Rule 5, which does apply to § 1292(b) appeals. And, the "Informative Motion" provides little, if any, of the information that Rule 5 requires. In addition, the district court's January Order involved plaintiffs' claim under 18 U.S.C. § 1962(c), not their other claims, which are the basis for the four questions they tried to raise in this court. The fact that plaintiffs filed their papers (responding to our order of January 19) within ten days of the district court's January 25 Order, does not reflect an effort to appeal from that January 25 Order, but seems simply a coincidence.

The upshot is that the plaintiffs have failed to meet § 1292(b)'s jurisdictional requirements, and we cannot decide the questions they seek to present.

*The order of the district court is affirmed but is vacated to the extent it denied summary judgment on plaintiffs' RICO claims and the cause is remanded to the district court for further proceedings consistent with the opinion filed this date.*

*The appeal of the plaintiffs is dismissed. No costs.*