**The REPUBLIC OF TURKEY, Plaintiff,**

**v.**

**OKS PARTNERS, et al., Defendants.**

**Civ. A. No. 89–3061–S.**

United States District Court,
D. Massachusetts.

July 20, 1992.

David S. Weiss, Goulston & Storrs, Boston, Mass., for plaintiff.

James Lee Bryant, D. Lloyd Macdonald, Kirkpatrick & Lockhart, Joseph F. Ryan, Lyne, Woodworth & Evarts, Paul J. O'Connell, Ropes & Gray, Jeffrey Scott Robbins, R. Robert Popeo, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS

SKINNER, District Judge.

This case arises out of a dispute over the ownership of nearly two thousand ancient Greek and Lycian silver coins. The Republic of Turkey alleges that the coins were unearthed in Turkey in 1984, and that under Turkish law all such artifacts within Turkey's borders are the property of Turkey even before they are discovered. The complaint alleges that the coins were illegally removed from the country by persons other than the defendants, and that the defendants eventually purchased them with knowledge of their illegal character. In its amended complaint, Turkey asserts claims against the defendants for equitable replevin, conversion, constructive trust, and for violations of the Racketeering Influenced and Corrupt Organizations Act (RICO), and the Massachusetts Consumer Protection Act. Jurisdiction is proper because of the federal question involved as well as diversity of citizenship. The defendants move to dismiss Turkey's claims by way of four separate motions. On December 6, 1992, I allowed defendants' motion to stay discovery pending disposition of these motions.

*Discussion*

### I  *Ownership*

The defendants argue that all of Turkey's claims are predicated on the theory that under Turkish law, Turkey owns the coins. The defendants cite *United States v. McClain*, 545 F.2d 988, *reh'g denied*, 551 F.2d 52 (5th Cir.1977) (*McClain I*), and its successor, *United States v. McClain*, 593 F.2d 658 (5th Cir.), *cert. denied*, 444 U.S. 918, 100 S.Ct. 234, 62 L.Ed.2d 173 (1979) (*McClain II*), which were decided under the National Stolen Property Act, 18 U.S.C. §§ 2314–15, for the rule that a sovereign cannot establish its "ownership" of a class of artifacts in the absence of its prior clear declaration to that effect. Defendants argue that in fact, Turkish law equivocates on the issue of whether artifacts such as the contested coins are state property and that Turkey therefore does not have the requisite ownership interest to maintain its claims. The Republic of Turkey strongly opposes the defendants' characterization of Turkish law and insists that since as early as 1906, Turkish law has been unequivocal in claiming outright ownership of artifacts such as the coins.

The determination of foreign law is a legal issue for the court to decide. Fed. R.Civ.P. 44.1. In deciding it, I may consider all relevant material, including testimony. *Id.* In the interest of justice, I will not decide this important issue of Turkish law on the materials before me at the present time. Rather, I will decide it only after a hearing on the merits, summary judgment motion, or full trial. Therefore, in this case, the plaintiff's allegations are enough to overcome the defendants' arguments based on the *McClain* cases. They are also enough to overcome the defendants' arguments that Turkey's lack of ownership interest in the coins fails to provide Turkey with standing to state a claim.

### II  *RICO*

In the fifth and sixth claims of its amended complaint, Turkey alleges that the defendants violated and conspired to violate RICO, 18 U.S.C. § 1961 *et seq.* According to the complaint, the defendants and the people who allegedly smuggled the coins out of Turkey have operated and continue to operate an enterprise for the purpose of importing stolen property into the United

States and selling the property for profit in violation of the National Stolen Property Act, 18 U.S.C. §§ 2314–2315, the Travel Act, 18 U.S.C. § 1952, and the money laundering provisions of the Anti–Drug Abuse Act of 1986, 18 U.S.C. § 1957.

The defendants move to dismiss the RICO claim on four grounds: that Turkey has failed to allege an injury to its property, that the predicate acts required under RICO have not been adequately pled, that the facts of the complaint do not allege a pattern of racketeering activity as required by the statute, and that the alleged RICO violations could not have proximately caused Turkey's injuries.

■ In deciding this motion to dismiss, I must "give the complaint a highly deferential reading, accepting the well-pleaded facts therein as true and drawing all reasonable inferences in the plaintiff's favor." *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 37 (1st Cir.1991). Turkey's allegations are sufficient to allege injury to its property under RICO. In *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1358–59 (9th Cir.1988), *cert. denied*, 490 U.S. 1035, 109 S.Ct. 1933, 104 L.Ed.2d 404 (1989), the complaint's allegation of injury to the sovereign were adequate where it sought the return of "money, funds and property belonging to the Philippines and its people" which the defendant had allegedly improperly removed from the country. Similarly, Turkey's claim that it has been injured by the loss of the coins is a sufficient claim of injury to sustain the RICO claim.

■ The necessary predicate acts are also adequately pled to survive the defendants' motion. Although the defendants are apparently correct that the provisions of the Travel Act and the Anti–Drug Abuse Act on which Turkey relies were enacted into law in 1986, after the defendants allegedly purchased the coins, the complaint also alleges that the violations of these statutes are ongoing. In addition, Turkey relies on allegations that the defendants on several occasions violated the National Stolen Property Act by purchasing the coins in three separate transactions, and by selling at least two coins. *See United States v. Licavoli*, 604 F.2d 613 (9th Cir.1979), *cert. denied*, 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980). These allegations sufficiently charge that the defendants have committed multiple related predicate acts required to trigger RICO.

■ The defendants also argue that the complaint does not allege a "pattern of racketeering activity" as required by the statute. In order to show a pattern of racketeering activity, a RICO plaintiff must allege at least two statutorily defined predicate acts, and he must show that the acts "are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J., Inc. v. Northwestern Bell Telephone Company*, 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989) (emphasis in original). Since I have held that the plaintiff here has alleged several related predicate acts, the only question is whether either prong of the criminal activity continuity test is satisfied. *See Fleet Credit Corp. v. Sion*, 893 F.2d 441, 446 (1st Cir.1990).

It is not necessary to decide whether the acts complained of "amount to" continued criminal activity, because the "pose a threat of" continued criminal activity prong is satisfied. Taking the facts alleged by Turkey to be true, as I must, the defendants knowingly obtained Turkey's property for the purpose of selling that property to collectors, and although the plaintiff knows of only two coins which have actually been sold to date, the defendants allegedly intend to sell many more in the future. These future sales may be in violation of the National Stolen Property Act, and thus the plain import of the allegations is that the defendants "pose a threat of continued criminal activity." *H.J.*, 492 U.S. at 239, 109 S.Ct. at 2900. Defendants point to no case in which a court has dismissed a RICO claim where the defendant had allegedly committed some prohibited acts and was so poised to commit a pattern of related prohibited acts, and I decline to lead the charge. *See United States v. Busacca*, 936 F.2d 232 (6th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 595, 116 L.Ed.2d 619 (1991).

■ Defendants submit the recent Supreme Court case of *Holmes v. Securities Investor Protection Corp.*, — U.S. —, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992), for the proposition that a civil RICO plaintiff must make a showing that the defendant's violation must have proximately caused the plaintiff's injuries. Here, however, the plaintiff claims an ongoing injury, i.e., that it is without immediate possession of a part of its cultural heritage, and I hold that the defendants' continued possession of the coin collection is a proximate cause of Turkey's claimed injury. Finally, since I will not dismiss the RICO claim, the claim of conspiracy to violate RICO stands as well.

## III   *Chapter 93A*

■ Defendants move to dismiss the seventh and eighth claims of the amended complaint, alleging violations of M.G.L. c. 93A, the Massachusetts Consumer Protection Act. The defendants first contend that c. 93A, § 9 protects only "consumers," of which the Republic of Turkey is not one. However, since its amendment in 1987, c. 93A has protected "persons" which include legal entities such as governments. "Person' shall include, where applicable, natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entity." M.G.L. c. 93A, § 1(a). *See Boston v. Aetna Life Insurance Co.*, 399 Mass. 569, 575, 506 N.E.2d 106 (1987) (city of Boston a "person" under c. 93A); *United States v. U.S. Trust Co.*, 660 F.Supp. 1085, 1090 (D.Mass. 1986) (United States a "person" under c. 93A). Similarly, Turkey is a "person" able to bring suit under the statute.

■ The defendants next assert that the complaint does not allege that the defendants are engaged in trade or commerce within the meaning of the statute. Under c. 93A § 9, a person is entitled to relief if he has been injured by another person's "use or employment of any method, act or practice declared to be unlawful by section two." Under section two, "unfair or deceptive acts or practices in the conduct of any trade or commerce" is prohibited. Finally, in section one, "trade and commerce" include "the advertising, the offering for sale, rent, lease or distribution of any services and any property ... and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this commonwealth." The defendants' argument is that there is no allegation of trade or commerce affecting the people of the commonwealth, because the only occurrence alleged to have anything remotely to do with Massachusetts or its people is that the defendants allegedly *possessed* the coins in Massachusetts. Defendants maintain that because the only *sales* alleged are to a dealer in England and another person whose location is not disclosed, this count must fail.

The complaint alleges that at a time that the coins were in Massachusetts and in the possession of the Massachusetts defendants, they were offered for sale to the public, and in fact some were sold. Although it may later prove to be that there has been no trade or commerce in this case which is actionable under chapter 93A, at the pleading stage the allegations as pled are enough to stave off dismissal. *See Schinkel v. Maxi–Holding, Inc.*, 30 Mass. App.Ct. 41, 565 N.E.2d 1219, *review denied*, 409 Mass. 1104, 569 N.E.2d 832 (1991) (question of whether act was within "trade or commerce" under c. 93A should be decided on a record of facts rather than on a motion to dismiss).

■ Finally, defendants argue that the Commerce Clause of the United States Constitution, art. I, § 8, cl. 3, precludes the c. 93A claim. Defendants characterize the claim as one of a potential patchwork of American laws and policies concerning international trade and argue that c. 93A's application to the facts of this case would be unconstitutional in light of *Japan Line, Ltd. v. County of Los Angeles*, 441 U.S. 434, 445–46, 99 S.Ct. 1813, 1819–20, 60 L.Ed.2d 336 (1979). In that case, the Supreme Court held that the Commerce Clause prohibits states from enacting laws which could lead to non-uniform treatment of foreign commerce entering the United States. The defendants' attempt to fit the

facts of this case into *Japan Line* is misplaced. The Commerce Clause protects foreign business entities from state legislation seeking to protect or prefer domestic business interests. *See Hunt v. Washington State Apple Advertising Com.*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). Where the impact of state legislation on foreign commerce is only incidental, the legislation is unconstitutional only if it "prevents the Federal Government from speaking with one voice when regulating commercial relations with foreign governments." *Wardair Canada, Inc. v. Florida Department of Revenue*, 477 U.S. 1, 8, 106 S.Ct. 2369, 2373, 91 L.Ed.2d 1 (1986).

The impact on foreign commerce in the present case is only minimal. What this case is about is whether the collection of coins was stolen, to whom it now belongs, and whether certain statutes were violated by the buying, concealing, offering for sale, and selling of the coins. Unlike the facts of *Japan Line*, in this case there is no basis for the contention that Massachusetts is penalizing those who deal in foreign commerce in favor of its own citizenry, especially since it is the defendants, some of whom are Massachusetts residents, who bear the potential liability under the Massachusetts statute. The defendants do not assert that there is any inherent commerce clause difficulty with this court deciding the common law claims for conversion, replevin, and the like, and similarly, I do not see any constitutional difficulty with my deciding the statutory question presented by the c. 93A claim.

## IV  *Statute of Limitations*

██ Defendants argue that all of Turkey's claims are barred by the applicable statutes of limitations. Under M.G.L. c. 260, § 2A, the statute of limitations for tort and replevin actions is three years. Although a cause of action generally accrues at the time of injury, tort claims are subject to the so-called "discovery rule," under which a cause of action which "is based on an inherently unknowable wrong" only accrues "when the injured person knows, or in the exercise of reasonable diligence should know of the facts giving rise to the cause of action." *Dinsky v. Framingham*, 386 Mass. 801, 438 N.E.2d 51, 52 (1982). A wrong may be inherently unknowable if it is "incapable of detection by the wronged party through the exercise of reasonable diligence." *International Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc.*, 29 Mass.App.Ct. 215, 560 N.E.2d 122, 126 (1990). "Ascertaining 'reasonable diligence,' like ascertaining 'reasonable care,' is ordinarily a fact-dominated enterprise." *Borden v. Paul Revere Life Ins. Co.*, 935 F.2d 370, 376 (1st Cir. 1991). In addition, "[a] wrong can also be inherently unknowable if the party wronged was the victim of fraudulent concealment so long as the fraudulent concealment was explicit ..." *Id.*, n. 4.

Turkey argues that the facts giving rise to its causes of action were "inherently unknowable" until shortly before it filed suit. The complaint's allegations include that the defendants required the smugglers to agree to keep the coin sales a secret, that the defendants falsely represented the country of origin of the coins in customs documents, and that the defendants withheld publishing any information about the coins for several years after their acquisition of them. Turkey argues that the case is analogous to *Autocephalous Greek–Orthodox Church v. Goldberg & Feldman Fine Arts, Inc.*, 917 F.2d 278, 289 (7th Cir.1990), where the court, dealing with the discovery rule under Illinois law, stated, "In the context of a replevin action for particular, unique and concealed works of art, a plaintiff cannot be said to have 'discovered' his cause of action until he learns enough facts to form its basis, which must include the fact that the works are being held by another and who, or at least where, that 'other' is." I agree with the Seventh Circuit's analysis and hold that Massachusetts law is in accord on this point. These allegations of the defendants' calculated, successful effort to hide the existence, or at least the provenance, of the coins, if true, could be enough for a jury to find that the facts were "inherently unknowable" to Turkey for purposes of tolling the statute of limitations under either

the unadorned discovery rule or the doctrine of fraudulent concealment. Consequently, Turkey's common law claims cannot be dismissed on statute of limitations grounds at this time.

■ In our circuit, RICO's four-year limitations period is also subject to the discovery rule, *see Rodriguez v. Banco Central,* 917 F.2d 664, 665–66 (1st Cir.1990) ("[E]ach time a plaintiff suffers an injury caused by a violation of 18 U.S.C. § 1962, a cause of action to recover damages based on that injury accrues to plaintiff at the time he discovered or should have discovered the injury."), as are claims made pursuant to c. 93A and its four-year limitations period. *See Paterson–Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985, 994 (1st Cir.1988). Therefore, for the reasons applicable to the common law claims, the RICO and chapter 93A claims cannot be dismissed as time barred on the pleadings alone.

### V  *Summary*

Accordingly, the defendants' four motions to dismiss are denied in their entirety. The stay on discovery pending disposition of these motions is vacated. Discovery in this case may proceed. The clerk shall assign a date for a scheduling conference.