**Larry D. CROWE, et al.,**

v.

**James W. SMITH, et al.**

**Civ. A. No. 92-2164-M.**

United States District Court,
W.D. Louisiana,
Monroe Division.

July 11, 1994.

Joseph R. Ward, Jr., Lynn H. Frank, Ward & Clesi, New Orleans, LA, John T. McDowell, Bankston & McDowell, Houston, TX, for plaintiffs.

Leroy Smith, Jr., Tallulah, LA, for James W. Smith.

James Eugene Mixon, Columbia, LA, for Russell Hart.

Robert S. Rooth, Corinne A. Morrison, James C. Young, Chaffe McCall, Phillips, Toler & Sarpy, New Orleans, LA, Anne B. Sobol, Slidell, LA, Susan R. Laporte, Metairie, LA, for Agrarian Development Corp., MLM Services Inc., Resolution Trust Co.

James W. Berry, Coenen & Berry, Rayville, LA, J. Allen Harvey, Jr., Monroe, LA, for Vernon McCrory, James E. Wooldridge, Bobby Thrialkill, Hugh Roche, Dwight Vines.

William E. Wright, Jr., Judy L. Burnthorn, Nancy J. Marshall, Deutsch Kerrigan & Stiles, New Orleans, LA, for Johnny Dollar.

Raymond J. Salassi, Jr., Jones Walker, Waechter Poitevent Carrere & Denegre, New Orleans, LA, Kurt D. Engelhardt, Hailey McNamara, Hall Larmann & Papale, Metairie, LA, Robert B. Bieck, Jr., Virginia W. Gundlach, Jones Walker, Waechter Poitevent Carrere & Denegre, New Orleans, LA, for

McLeod Swearingen Verlander et al., Robert P. McLeod, Lawson L. Swearingen.

Kurt D. Engelhardt, Hailey McNamara Hall Larmann & Papale, Metairie, LA, W. Glenn Burns, Hoffman Sutterfield Ensenat & Bankston, New Orleans, LA, Judy L. Burnthorn, Nancy J. Marshall, Deutsch Kerrigan & Stiles, New Orleans, LA, for Elmer G. Noah, II, Kirby O. Price.

Colette J. Winston, U.S. Dept. of Justice Torts, Branch Civ. Div., Washington, DC, for U.S.

M. James Chaney, Jr., Teller Martin Chaney & Hassell, Vicksburg, MS, for Merchants Bank NA.

Stephen L. Harrison, Shafto & Ashbrook, Monroe, LA, for L. Michael Ashbrook.

Thomas Davenport, Jr., Davenport Files & Kelly, J. Allen Harvey, Jr., Monroe, LA, for Malcolm Maddox.

## *RULING*

NAUMAN S. SCOTT, District Judge.

Before the court is a Motion for Summary Judgment filed on behalf of defendants Robert P. McLeod, Lawson L. Swearingen, and David E. Verlander, III (the Law Partners). Five other defendants or groups of defendants—Johnny E. Dollar; James E. Woolridge, Bobby Thrialkill, Dwight Vines, and Hugh Roche (the Bank Directors); Russell Hart; Malcolm Maddox; and Kirby O. Price and Elmer G. Noah, II (Price & Noah)—adopt Dollar's motion by reference. Movants urge this court to dismiss the RICO claims of plaintiffs, Larry D. Crowe (Crowe), Pioneer Produce Co. and Sue Ellen Crowe Silman as Administratrix of the Succession of Reba Crowe (collectively referred to as plaintiffs or "the Crowes"), against them on the grounds that such claims are barred by RICO's four-year statute of limitations.

## I. *Factual and Procedural Background*

This lawsuit arises from a series of land dealings centering on two properties known as Eagle Bend and Australia Island.[1] In 1979, Crowe sold 410 acres of land known as the Forrest Tract and put up $700,000 in cash as a down payment to buy the 9,000–acre Morrissey Property in Mississippi. The total price of this land was $5.3 million. The Morrissey Family Trust financed the remaining $4.6 million owed on this property with a note payable over 30 years at a 6% rate of interest. This land became known as Eagle Lake Farms. Crowe took out an additional $800,000 in loans from the Farmer's Home Administration (FmHA) to develop the property and build 10 homes there.

In the early part of 1985, Crowe sought a loan from People's Homestead Federal Bank for Savings (Old People's) so that he could develop Eagle Bend more rapidly. Instead of entering into a loan agreement, however, Crowe alleges that the bank persuaded him to join into a partnership with a wholly-owned subsidiary of Old People's, Agrarian Development Corporation (Agrarian). Old People's board of directors approved the partnership in a meeting on March 19, 1985. The Crowe/Agrarian partnership became known as Eagle Bend Development. In that same meeting, the directors also voted to give Russell Hart, the president of Old People's, control over the operation of Eagle Lake Development. On April 3, 1985, Crowe conveyed Eagle Bend Farms to the Eagle Bend Development partnership.

Under the partnership agreement, Old People's assumed 50% of the Morrissey loan and 50% of the obligation to FmHA. Old People's also agreed to pay the sum of $3.5 million to liquidate debts on the property and to create a $1 million capital account to finance future development of the project. In exchange, Crowe transferred to the partnership a 50% interest in his Eagle Lake assets, including the farm land, condominiums, houses, a flying service, and farm equipment.

Plaintiffs allege that soon after the formation of the partnership, Russell Hart; the officers and directors of Old People's; Johnny Dollar; the law firm of McLeod, Swearingen, Verlander, Dollar, Price & Noah; and Sonny Smith devised a plan to fraudulently take over Crowe's interest in Eagle Bend and to squeeze him out of his interest in Australia Island. The purported scheme in-

---

1. For the purposes of this Ruling, we need not discuss the events relating to Australia Island.

volved whipsawing Crowe in a flurry of legal proceedings (including the fraudulent institution of bankruptcy lawsuits, liquidation actions, and foreclosure proceedings), starving Crowe for cash, and overpowering Crowe through their greater resources.

We need not detail the complex chronology of events, as detailed in the Complaint and RICO Case Statement, plaintiffs allege took place between 1985 and 1990 in furtherance of the defendants' scheme to divest Crowe of his interest in Eagle Bend and Australia Island. Instead, a brief, noncomprehensive listing of the allegations shall suffice. Plaintiffs claim that the defendants ousted Crowe as farm manager; refused to allow Eagle Bend's participation in a U.S. Department of Agriculture farm subsidies program; instituted a fraudulent foreclosure proceeding in West Carroll Parish claiming Crowe had used this property to cross collateralize crop loans of the two farm partnerships; created an emergency situation to justify their obtaining Chapter 11 and Chapter 7 bankruptcy orders; refused to pay for the construction of sewers and streets at Eagle Bend, thus preventing the sale of condominiums; forbade the leasing of land to farmers whose rent payments might have covered the note obligations; and demanded his payment, but not that of his partners Smith and Agrarian, of crop loans for Eagle Bend and Australia Island.

Crowe, now claiming he was financially exhausted and unable to continue litigation, entered into a compromise agreement with Agrarian. Old People's incorporated MLM Systems, Inc. to take over Crowe's 50% interest in Eagle Bend Development. Plaintiffs claim that Old People's, Agrarian and MLM violated the compromise agreement by preventing Crowe from gaining title to an airplane and by failing to obtain his release from the FmHA mortgages.

RTC entered the picture on October 19, 1989, when, by order of the Director of the Office of Thrift Supervision (OTS), it was appointed as sole receiver of Old People's.

RTC reorganized the bank as People's Homestead Savings Bank, FSB (New People's). By virtue of a Purchase and Assumption Agreement between New People's and RTC–Receiver, also dated October 19, 1989, New People's acquired the assets and certain liabilities of RTC–Receiver. By further order of the Director of OTS, RTC was appointed Conservator of New People's. On August 2, 1991, OTS replaced RTC acting as Conservator of New People's with RTC acting as Receiver of New People's.

Plaintiffs allege that RTC officials fell under the influence of several of the defendants, some of whom remained associated with the bank. After RTC put Eagle Bend up for sale, Crowe sought to repurchase the property and found financing with a group of Tennessee investors, who submitted a written purchase offer. RTC rejected the offer, ruling that the offer did not meet bidding conditions. Plaintiffs allege that RTC refused to inform Crowe of the conditions of the bid, failed to provide him with a property brochure and refused to meet with him and his financial backer, James Rainer.

On January 25, 1990, Crowe filed suit seeking to enjoin the sale of Eagle Bend. Crowe alleged that RTC attorneys represented to the trial court that the property was not for sale. Accordingly, the court denied Crowe's motion for injunctive relief on April 24, 1990. See *Larry Dean Crowe v. Eagle Bend Development*, No. 90–356 (La. Dist.Ct. 4th 1990). That same day, Sonny Smith purchased Eagle Bend for $10.00 and an assumption of the Morrissey note.[2] The purchase agreement did not include a provision indicating who should pay for the remaining debt on the FmHA note for which Crowe was liable.[3]

Plaintiffs filed this suit on December 2, 1992, naming 19 separate defendants.[4] The Complaint, as amended, seeks relief for violations of 18 U.S.C. §§ 1962(a), (b), (c) and (d) (civil RICO); sets forth state law causes of action for fraud, unfair trade practices, inten-

---

2. Smith's purchase was subject to an option to buy held by Russell Hart.

3. Plaintiffs maintain that those obligated under the compromise agreement never paid off the

FmHA mortgage or obtained Crowe's release from this debt.

4. Plaintiffs filed an amended complaint on January 4, 1993.

tional infliction of emotional distress, breach of fiduciary duty, tortious interference with contract rights, and breach of contract; asks for a declaration that Mississippi judgments are null and void; and prays for relief from the RTC under the Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et seq.*

By Rulings dated February 23, 1994, 848 F.Supp. 1248, and March 28, 1994, 848 F.Supp. 1258, this court dismissed all of plaintiffs' claims against Dollar, the Law Partners, the Bank Directors, Malcolm Maddox and Price & Noah except for the RICO and breach of fiduciary duty claims. This court's recent Ruling, dated July 1, 1994, 852 F.Supp. 533, granted partial summary judgment to movants on the grounds that plaintiffs' breach of fiduciary duty claims against movants were prescribed.[5] Consequently, the only remaining claims against movants are plaintiffs' RICO claims.

## II. *Law and Analysis*

█ The United States Supreme Court determined in *Agency Holding Corp. v. Malley–Duff & Assoc., Inc.*, 483 U.S. 143, 157, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987), that civil RICO actions are subject to a four-year statute of limitations. The Court expressly reserved, however, the question of when a civil RICO cause of action begins to accrue. *Id.* at 156–57, 107 S.Ct. at 2767. Except for the United States Courts of Appeals for the Fifth Circuit and for the District of Columbia, all federal appeals courts

have subsequently addressed this question.[6] These courts reach varying conclusions, leaving us with a "smorgasbord of civil RICO accrual rules" from which to select the most appropriate rule. *Granite Falls*, 924 F.2d at 152.

There is common ground, however, among the circuits concerning this issue. Most importantly, each has "incorporated the principle of discovery into the accrual rule governing civil RICO actions in the particular circuit." *Id.* at 153; *see also McCool*, 972 F.2d at 1465 ("Every court that has considered an accrual rule for civil RICO has adopted some sort of discovery rule."). Indeed, the Fifth Circuit held in a pre-*Malley–Duff* civil RICO opinion that "the period of limitations does not commence until the injured party discovers, or, in the exercise of reasonable diligence, should have discovered, the alleged fraud." *La Porte Const. Co., Inc. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1256 (5th Cir.1986).[7]

The circuits diverge, however, over the "question of what the plaintiff must actually or constructively know before the limitations period will start to run." *Granite Falls*, 924 F.2d at 153. The First, Second, Fourth, Seventh and Ninth Circuits employ an injury-based accrual rule.[8] Under this method, a civil RICO cause of action accrues at the time plaintiff discovered or should have discovered his injury. The Third, Eighth, Tenth and Eleventh Circuits[9] have, on the

---

5. All of the instant movants adopted the Motion for Summary Judgment filed on behalf of Dollar, which we addressed in our July 1, 1994 Ruling.

6. *See Rodriguez v. Banco Central*, 917 F.2d 664 (1st Cir.1990); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096 (2nd Cir.1988), *cert. denied* 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989); *Keystone Ins. Co. v. Houghton*, 863 F.2d 1125 (3d Cir.1988); *Pocahontas Supreme Coal Co. v. Bethlemhem Steel Corp.*, 828 F.2d 211 (4th Cir.1987); *Agristor Financial Corp. v. Van Sickle*, 967 F.2d 233 (6th Cir.1992); *McCool v. Strata Oil Co.*, 972 F.2d 1452 (7th Cir.1992); *Granite Falls Bank v. Henrikson*, 924 F.2d 150 (8th Cir.1991); *Beneficial Standard Life Ins. Co. v. Madariaga*, 851 F.2d 271 (9th Cir.1988); *Bath v. Bushkin, Gaims, Gaines & Jonas*, 913 F.2d 817 (10th Cir.1990); *Bivens Gardens Office Bldg., Inc. v. Barnett Bank of Fla., Inc.*, 906 F.2d 1546 (11th Cir.1990), *cert denied*, 500 U.S. 910, 111 S.Ct. 1695, 114 L.Ed.2d 89 (1991).

7. Both movants and plaintiffs agree that *La Porte* does not control because it was issued without the guidance provided by *Malley–Duff*. *See* Mem. in Supp. of Mot. for Summ. J. at 9–11; Mem. in Opp. to Third Mot. for Summ. J. at 13–14.

8. *Rodriguez*, 917 F.2d at 666; *Bankers Trust*, 859 F.2d at 1102; *Pocahontas*, 828 F.2d at 220; *McCool*, 972 F.2d at 1464–66; *Beneficial Standard Life*, 851 F.2d at 275.

9. *Keystone*, 863 F.2d at 1130; *Granite Falls Bank*, 924 F.2d at 154; *Bath*, 913 F.2d at 820–21; *Bivens Gardens*, 906 F.2d at 1553–54. The Sixth Circuit addressed the civil RICO accrual rule in *Agristor*, 967 F.2d 233. The court declined to follow *Keystone* and did not select one of the other accrual rules, finding instead that, under the facts before it, plaintiffs' claims were barred regardless of which remaining accrual rule it chose. *Id.* at 241–42.

other hand, adopted an accrual rule which applies the general discovery rule to both the pattern element and the injury element of RICO.[10]  In other words, these courts find that a civil RICO cause of action does not accrue until the plaintiff discovers or should have discovered the source of his injury and that the injury is part of a pattern.  *See, e.g., Bivens Gardens*, 906 F.2d at 1554.

Muddying the rough distinction between these groups—i.e. injury-based accrual versus injury- and pattern-based accrual—is the fact that some courts in both groups [11] utilize a "separate accrual" rule.  For purposes of this Ruling, we need not attempt to fully explain this rule of separate accrual and the manner in which it plays out under the varying civil RICO accrual rules.  Instead, it suffices to say that, under this rule of separate accrual, each time a plaintiff suffers an independent RICO injury, a new RICO cause of action accrues:  (a) when plaintiff discovers or should have discovered his injury (injury-based accrual), *see, e.g., Bankers Trust*, 859 F.2d at 1102;  or (b) when plaintiff discovers or should have discovered his injury and that the injury is part of a pattern (injury- and pattern-based accrual), *see, e.g., Bivens Gardens*, 906 F.2d at 1554–55.

Further complicating the picture, the Third Circuit includes an exception to the injury- and pattern-based, or elemental, accrual rule.  The civil RICO accrual rule employed in the Third Circuit, as announced in *Keystone*, is as follows:

> the limitations period for a civil RICO claim runs from the date the plaintiff knew or should have known that the elements of the civil RICO cause of action existed *unless, as a part of the same pattern of racketeering activity, there is further injury to the plaintiff or further predicate acts occur, in which case the accrual period shall run from the time when the plaintiff knew or should have known of the last injury or the last predicate act which is part of the same pattern of racketeering activity.*

863 F.2d at 1130.  Courts refer to this civil RICO accrual rule as the "last predicate act" rule.  *See, e.g., McCool*, 972 F.2d at 1452.  However, in order to avoid confusion with the "last predicate act" rule utilized by some courts without the corollary discovery principles,[12] commentators designate the Third Circuit's civil RICO accrual rule as the "last predicate act discovery" rule.  Hume, Note, *RICO and a Uniform Rule of Accrual*, 99 Yale L.J. 1399, 1415 (1990).  We shall do the same.

The Third Circuit was the first federal appeals court to depart from injury-based accrual civil RICO rules and apply discovery principles to the pattern element of a RICO cause of action.  The court noted that "the essential problem" with injury-based civil RICO accrual. rules "lies in the fact that RICO is a crime of association, which is violated, *inter alia*, by 'any person . . . associated with any enterprise . . . the activities of which affect . . . commerce, conduct[ing] . . . [the] enterprise's affairs through a pattern of racketeering.'  18 U.S.C. § 1962(c).  Therefore the discovery rule must apply to the pattern element as well as the injury element."  *Keystone*, 863 F.2d at 1129–30.  This departure resonated with the Supreme Court's recently-issued opinion in *Malley–Duff*, which made clear that "the heart of any RICO complaint is the allegation of a *pattern* of racketeering."  483 U.S. at 154, 107 S.Ct. at 2766.

Recognizing that "[t]he primary source of RICO's unique character is its pattern requirement," *Granite Falls*, 924 F.2d at 153, three sister circuits followed *Keystone* in applying discovery principles to both the injury

---

10.  A violation of § 1962 "requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. . . .  In addition, the plaintiff only has standing if, and only can recover to the extent that, he has been injured in his business or property by the conduct constituting the violation."  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985).

11.  *Rodriguez*, 917 F.2d at 666;  *Bankers Trust*, 859 F.2d at 1102;  *McCool*, 972 F.2d at 1464–66;  *Bath*, 913 F.2d at 820;  *Granite Falls Bank*, 924 F.2d at 154;  *Bivens Gardens*, 906 F.2d at 1554–55.

12.  *See, e.g., County of Cook v. Berger*, 648 F.Supp. 433, 435 (N.D.Ill.1986).

and pattern elements for accrual purposes.[13] None of these courts, however, adopted the last predicate act discovery exception included in the *Keystone* accrual rule. The court in *Bivens Gardens* distinguished *Keystone* factually and incorporated a limiting separate accrual provision to its rule. 906 F.2d at 1554–55. The court in *Granite Falls* embraced the *Bivens Gardens* separate accrual rule, noting that "the *Bivens Gardens* rule better reflects the underlying policy of a statute of limitations requiring diligence on the part of the plaintiff than does the seemingly more open-ended rule fashioned by the Third Circuit in *Keystone*." 924 F.2d at 154. The *Bath* court adopted the *Bivens Gardens* rule without commenting on the *Keystone* rule. 913 F.2d at 820.

We find that the unique nature of a civil RICO cause of action, which requires injuries caused by a pattern of racketeering activity, *see* 18 U.S.C. § 1962(a), (b), (c) and (d), mandates the basic injury- and pattern-based accrual rule utilized by the Third, Eighth, Tenth and Eleventh Circuits. We now must determine whether we should include the last predicate act discovery exception in the accrual rule we adopt. We find that the RICO statute itself, as well as the teachings of the Supreme Court, mandate this exception to the injury- and pattern-based accrual rule.[14]

The definition section of the RICO statute provides that a " 'pattern of racketeering activity' requires at least two acts of racketeering activity ... the last of which occurred within ten years after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). Remarking on this provision, the Third Circuit noted that

> there is inherent in the statute a ten year limit on the point at which the last predicate act for purposes of accrual may occur. Congress in enacting the ten year limit must have envisioned causes of action which would involve patterns of racketeering extending over that period of time. It would be inconsistent with this breadth of definition for us to state that we will look

to the past ten years to see if a civil RICO claim exists but if we find ten years of racketeering activity, all related and all perpetrated by the same defendants, we will provide a remedy only to those who were victimized within the past four years. To do so would encroach upon and limit a legislatively-enacted scheme to provide recovery for racketeering injuries.

*Keystone*, 863 F.2d at 1132–33. The court concluded that this provision, coupled with the fact that "[i]t is the continuing nature of the violation which distinguishes a RICO claim from claims arising simply from a predicate act ... require[d] the rule [it] announce[d]." *Id.* at 1131; *cf. Sedima*, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14, ("It is the factor of *continuity plus relationship* which combines to produce a pattern. ... 'criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' This language may be useful in interpreting other sections of the Act.") (internal citations omitted); *H.J., Inc. v. Northwestern Bell*, 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989) ("[T]o prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity.").

We find it interesting that, with the exception of the Third Circuit and Eighth Circuits, all of the other circuits tackling the civil RICO accrual issue avoid reconciling their accrual rules with § 1961(5). In *Granite Falls*, the Eighth Circuit reasoned that

> [a] violation of section 1962 results not merely from a single act of racketeering activity but from a pattern of racketeering activity, which by definition requires at least two predicate acts occurring within a ten year period. In selecting a term of ten years within which predicate acts could occur to establish the pattern requirement,

---

**13.** *Granite Falls Bank* 924 F.2d at 154; *Bath,* 913 F.2d at 820; *Bivens Gardens,* 906 F.2d at 1553–54.

**14.** We adopt the *Keystone* rule only as it relates to subsequent predicate acts, not as it extends the

accrual date to the time of "further injury." *See infra,* at 1184–1185.

Congress must have contemplated recovery for remote acts and even for remote injuries.

924 F.2d at 154. Yet, in the next paragraph, the court rejects the "seemingly more open-ended" *Keystone* accrual rule and adopts the restrictive *Bivens Gardens* rule of separate accrual. *Id.*

In *Rodriguez*, the First Circuit also pays lip-service to § 1961(5). 917 F.2d at 664. There, the court noted that the *Keystone* accrual rule, in conjunction with § 1961(5), could potentially allow an injured RICO plaintiff fourteen years to bring suit. *Id.* The court found this "difficult to reconcile with the Supreme Court's determination that 'there is a need for a uniform statute of limitations for civil RICO' lest 'the memories of witnesses ... fade[ ] or evidence [be] ... lost.'" *Id.* (quoting *Malley–Duff*, 483 U.S. at 156, 107 S.Ct. at 2767.) We find this tortured reading and critical application of *Malley–Duff* entirely unpersuasive for a host of reasons, some of which we detail below.

First, the Court voiced its concern over loss of evidence and witness' memories in reply to Justice Scalia's position in his dissent that *no* statute of limitations should apply if state codes fail to furnish an appropriate limitations period, *Id.* at 170, 107 S.Ct. at 2774 (Scalia, J., dissenting), not in reference to the need for a uniform statute of limitations. *Id.* at 155–56, 107 S.Ct. at 2766–67. Second, the Court in *Malley–Duff* answered the need for a uniform statute of limitations for civil RICO by establishing a four-year limitations period; however, the Court expressly reserved the accrual issue, thereby emphasizing the importance of separating these issues. *Id.* at 157, 107 S.Ct. at 2767. Additionally, the First Circuit's apparent concern that a plaintiff might have fourteen years in which to sue under RICO after defendants committed their first predicate criminal act against him neglects to consider the fact that this right to sue only extends if

the defendants continue to commit criminal acts against him.[15]

The First Circuit concludes its criticism of the breadth accorded by § 1961(5) by stating that "[i]n any event, we do not know why a knowledgeable plaintiff should have fourteen, rather than four years to bring suit." *Rodriguez*, 917 F.2d at 667. Nor do we; however, "this defect—if defect it is—is inherent in the statute as written, and its correction must lie with Congress." *Sedima*, 473 U.S. at 499, 105 S.Ct. at 3286–87; *see also U.S. v. Thomas*, 991 F.2d 206, 215 (5th Cir.1993), *cert. denied* —— U.S. ——, 114 S.Ct. 607, 126 L.Ed.2d 572 ("Actual or potential aberrant results, however, do not excuse reading (or writing) anything into or out of a statute that Congress has so consciously adopted.").

Bolstering our determination that the *Keystone* last predicate act discovery rule is the appropriate civil RICO accrual rule is the Congressional dictate that RICO "shall be liberally construed to effectuate its remedial purposes." Organized Crime Control Act, Pub.L. No. 91–452 § 904(a), 84 Stat. 947 (1970) (codified at 18 U.S.C. § 1961 note). Moreover, the Supreme Court made clear in *Sedima* that this Congressional dictate, coupled with "Congress' self-consciously expansive language and overall approach" mandate that "RICO is to be read broadly." 473 U.S. at 497–98, 105 S.Ct. at 3285–86.

For the reasons stated above, we adopt the *Keystone* accrual rule, at least in so far as it extends the time for accrual of a civil RICO cause of action to the date plaintiff discovers or should have discovered the last predicate act committed upon him as part of the same pattern of racketeering activity. The accrual rule we employ, therefore, provides that the limitations period for a civil RICO cause of action runs from the date plaintiff knew or should have known that the elements of a civil RICO cause of action existed, unless, as part of the same pattern of racketeering activity, further predicate acts occur which are part of the same pattern. In that case,

---

**15.** The First Circuit offers an additional criticism of the last predicate act discovery rule by stating that "[i]n fact, it seems directly inconsistent with the Supreme Court's choice of a four-year Clayton Act statute *instead* of criminal RICO's five-year statute of limitations, which indeed runs

from the 'last predicate act.'" *Rodriguez*, 917 F.2d at 667. This argument again confuses the issues of the proper civil RICO statute of limitations with the appropriate civil RICO accrual rule.

the accrual period shall run from the time when the plaintiff knew or should have known of the last predicate act which is part of the same pattern of racketeering activity.

Applying this rule to the summary judgment evidence before us, we find that there are genuine issues of material fact which preclude our granting of summary judgment on the basis that plaintiffs' RICO claims are barred by the statute of limitations. Plaintiffs' position is that no matter what civil RICO accrual rule we apply, their claims are not barred by the four-year statute of limitations. This is because they allege that Crowe was not aware of, and should not have been aware of, the alleged fraudulent compromise agreement scheme, which was "part and parcel of the whole scheme to paralyze Crowe," before December 2, 1988, four years before the Complaint was filed. Mem. in Opp. to Third Mot. for Summ. J. at 6. Defendants challenge this position by asserting that "plaintiffs knew or should have discovered the alleged compromise scheme before December 2, 1988." Law Partners Reply to Pls' Mem. in Opp. to Mot. for Summ. J. at 7. We cannot decide this factual issue with the summary judgment evidence before us, and, therefore, we reserve this factual determination for trial.

Moreover, plaintiffs allege that Dollar committed a RICO predicate act when, sometime in 1990, he "influenced RTC through Maddox so that Smith offer to purchase Eagle Bend was accepted and Crowe/Rainer offer was opposed." RICO Case Statement at 13. The verity of this allegation and whether such conduct constitutes a RICO predicate act are issues which, again, we cannot answer with the summary judgment evidence before us. Therefore, we reserve these issues for trial and must deny movants' Motion for Summary Judgment.

### III. Conclusion

Accordingly, the Motion for Summary Judgment filed on behalf of Robert P. McLeod, Lawson L. Swearingen, and David E. Verlander, III and adopted by reference by James E. Woolridge, Bobby Thrialkill, Dwight Vines, and Hugh Roche; Johnny E. Dollar; Russell Hart; Malcolm Maddox; and Kirby O. Price and Elmer G. Noah, II on the issue of whether plaintiffs' RICO claims are barred by the statute of limitations is hereby **DENIED.**